No. 24,471.

E. B. BLACK and N. T. VEATCH, Jr., Partners, doing business as BLACK AND VEATCH, *Appellees*, v. THE CITY OF LAWRENCE, *Appellant*.

SYLLABUS BY THE COURT.

CITY WATERWORKS—*Improvements—Services as Engineers—Action for Money Had and Received.* A company installed a filtration plant for a city under a contract including a provision that the company should pay such expenses for engineering and inspection as the city might incur by reason of delay on its part. The construction, with that of other waterworks improvements, was supervised by engineers employed by the city for a fixed compensation not affected by the time occupied. The city knew before it settled with the filtration company that the engineers claimed $970.84 for extra engineering occasioned by the delay of that company. Such settlement was made upon the basis of a final estimate submitted by the engineers showing a charge on that account against the company for the sum stated, which the city retained. It is held in an action by the engineers against the city for the recovery of the money so withheld that the city by implication of fact or of law assumed an obligation to retain it for the benefit of the engineers and is liable to them for it.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed May 12, 1923. Affirmed.

*C. A. Smart,* and *Walter G. Theile,* both of Lawrence, for the appellant.

*T. M. Lillard,* of Topeka, *A. L. Beach,* and *Bert Steeper,* both of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

MASON, J.: Black and Veatch, a firm of engineers, sued the city of Lawrence for $970.84, and recovered a judgment for that amount from which an appeal is taken on the ground that because of the findings of fact the decision should have been in favor of the defendant.

The plaintiffs under employment by the city prepared plans for

and supervised the construction of improvements in the city water-
works including a filtration plant. The contract to install the fil-
tration plant was let separately and contained a provision that
unless the work was completed within a time indicated the con-
tractor (the New York Continental Jewel Filtration Company)
should pay such expenses for engineering and inspection as might
be incurred by the city because of the contractor's delay. A final
settlement between the city and the filtration company was made
upon the basis of a statement which included a charge of $970.84
against the company for "Extra engineering," the city retaining this
much of the amount which it would otherwise have paid. This ac-
tion was brought for the recovery of the sum so retained.

The special findings showed these facts in addition to those already
stated: The written contract by which the plaintiffs were employed
by the city provided that they should receive 5 per cent of the cost
of the improvements for their "Services, comprising all engineering
service from the beginning of the preliminary surveys to the com-
pletion of the final tests. The filtration company  .  .  .  com-
pleted its contract about May, 1919. From time to time payments
to the filtration company were made on estimates submitted by
plaintiffs, and the last payment was made on an estimate submitted
by the plaintiffs under date of June 2, 1919. On July 14, 1919, the
defendant city paid the filtration company the sum of $4,810.52, the
amount shown to be due them on said final estimate  .  .  .  In
making up this final estimate, credit was given the city and a charge
made against the filtration company for the sum of $970.84, the
same being credited and charged as 'extra engineering.' There was
no contract, express or implied, between the plaintiffs and the city,
nor any arrangement between them by which the city was primarily
liable for any extra engineering performed or to be performed by the
plaintiffs in carrying out their contract with the city. The question
of the payment for extra engineering charges or expenses arose be-
tween the plaintiffs and the city some time in the latter part of the
year 1919, and discussion in regard to same continued up, until the
time this action was filed. Prior to July 14, when the city paid the
final estimate of $4,810.52 to the filtration company  .  .  .  and
availed itself of the credit for $970.84, for 'extra engineering,' it had
been frequently brought to its notice that the plaintiffs claimed the
amount credited for extra engineering as compensation for their ser-

vices or expenses for the engineering and inspection occasioned by the failure of the filtration company to complete its contract within the time provided for by the contract between the filtration company and the city."

Inasmuch as the plaintiffs under their contract with the city were entitled to receive for their services, irrespective of the time consumed, a fixed percentage of the cost of the improvements, the plaintiffs had no valid claim against the city for additional compensation on account of any delay, and the city had. no valid claim against the filtration company for extra engineering and inspection occasioned by delay, because the city could incur no expense in that respect under its contract with the plaintiffs. But the question here presented is whether the city having withheld $970.84 from the filtration company on the theory that it had such a claim, and having effected a settlement on that basis, may now, in order to keep the money for its own benefit, be heard to say that the plaintiffs are not entitled to it.

The money in dispute clearly does not belong to the filtration company, for it has in effect made a voluntary payment of it to compensate those with whom it dealt for additional engineering and inspection caused by its fault. It does not belong to the city because in its own behalf it had no claim to it and made none, having received it upon the theory of its being answerable therefor to the plaintiffs. The plaintiffs originally were without legal right under which they could demand it; not from the city because they had agreed to accept what was practically a lump sum for their services, regardless of the time spent; and not from the filtration company, because they had no contractual relation with it. A moral obligation to the plaintiffs, however, grew out of the situation. The burden of additional time spent upon engineering and inspection caused by delay on the part of the filtration company fell upon the plaintiffs and not upon the city. It was entirely competent for the three parties to adjust the matter between themselves in accordance with substantial justice. Prior to its settlement with the filtration company the city knew ("it had been frequently brought to its notice") that the plaintiffs were claiming $970.84 for their services or expenses for the extra engineering and inspection occasioned by the delay of the filtration company. The plaintiffs prepared the final estimate showing the deduction of that sum on that account. The

filtration company would have been within its legal rights in re-fusing to accept the deduction, and the city would have been pro-tected from further liability if it had paid the amount to the filtration company. But the filtration company by acquiescing in the settlement on the basis of the estimate accepted the adjustment therein proposed, and in the judgment of this court, the city, in retaining the money, by fair implication assumed an obligation to do so for the benefit of the plaintiffs and is responsible to them for it. The implication, if not one of fact, involving an actual intentional agreement on the part of the city, is one of law, based upon the duty of right conduct, resulting in a constructive or quasi contract. In the latter case the obligation arises "not from consent, but from the law or natural equity," and is imposed upon the ground that it is "dictated by reason and justice," and is "allowed to be enforced by an action *ex contractu.*" (13 C. J. 244.) "In one word, the gist of this kind of action [an action upon the case for money had and received to the plaintiff's use] is, that the defendant, upon the circumstances of the case, is *obliged by the ties of natural justice and equity* to *refund* the money." (Lord Mansfield, speaking for the court, in *Moses v. Macferlan*, 2 Burr. 1005, 1012.) "An action for money had and received is an equitable action, governed by equitable principles . . . All that plaintiff need show is that defendant holds money which, in equity and good conscience, belongs to him." (27 Cyc. 849, 854.)

The judgment is affirmed.